**James GRECCO, Appellant (Defendant below),**

v.

**Madaline CAMPBELL, Appellee (Plaintiff below).**

No. 3–578A104.

Court of Appeals of Indiana, Third District.

March 12, 1979.

Rehearing Denied April 18, 1979.

Timothy M. Swan, Spangler, Jennings, Spangler & Dougherty, Gary, for appellant.

Lee J. Christakis, Gary, Max Cohen, Merrillville, for appellee.

STATON, Judge.

James Grecco appeals from the denial of his motion to set aside a default judgment.

We affirm.

On October 30, 1976, Grecco and Madaline Campbell were involved in an automobile accident in which Campbell was injured. In an effort to negotiate a settlement, Campbell's attorney sent several letters to Grecco and to Grecco's insurance carrier, Sentry Insurance Company. The letters were not acknowledged. On February 15, 1977, Campbell's attorney sent another letter to Sentry. That letter identified the parties, the date of the accident and Sentry's file number. Enclosed were copies of Campbell's medical bills and a statement advising Sentry that none of the prior letters had been acknowledged. The statement further advised that Campbell would file suit if the letter was not acknowledged within ten days. Sentry did not acknowledge the letter until April 12, 1977.

On March 18, 1977, Campbell filed her complaint. A summons was issued and, pursuant to Ind.Rules of Procedure, Trial Rule 4.1,[1] the summons and complaint were delivered by the sheriff to Grecco's house. On March 28, 1977, Campbell's attorney sent yet another letter to Sentry at its claims processing office in Chicago, advising them that suit had been filed and providing them with the date, court and cause number. A copy of the complaint was also enclosed.

Neither Grecco nor Sentry entered an appearance. Accordingly, on April 27, 1977, Campbell applied for and obtained an entry of default and, after submitting evidence on damages, was awarded a default judgment.

Pursuant to TR. 60[2], Grecco filed a motion to have the judgment set aside. At the hearing on that motion Grecco testified that because of marital and health problems he had been staying with relatives at the time the complaint was delivered to his house and that it was not until April 13, 1977, when he returned to the house, that he first became aware that Campbell had filed suit. Grecco further testified that he then mailed the summons and complaint to Sentry's home office in Wisconsin. The home office, in turn, forwarded the summons and complaint to its claim processing office in Chicago. The matter did not come to the attention of the claims supervisor until May 3, 1977, when he returned from a vacation. By the time the claims supervisor forwarded the summons and complaint to local counsel, the default judgment had been entered.

■ Grecco's first contention on appeal is that the trial court erred in failing to find that his inaction prior to the default constituted or was the result of "excusable neglect." There are no fixed rules for determining what facts and circumstances do constitute excusable neglect. That determination is, instead, one addressed to the trial court's discretion. *Soft Water Utilities, Inc. v. LeFevre* (1973), 261 Ind. 260, 301 N.E.2d 745. Accordingly, our scope of review is limited to the question of whether or not the trial court abused its discretion.

The fact that Grecco was having marital and health problems and thus was not aware of the lawsuit until April 13, 1977, and the fact that the claims supervisor was

---

1. TR. 4.1(A) provides that service may be made upon an individual by leaving a copy of the summons and complaint at his "dwelling house or usual place of abode."

2. TR. 60(B) provides that "On motion and upon such terms as are just the court may relieve a party or his legal representative from a final judgment, order, default or proceeding for the following reasons:

    (1) mistake, surprise, or excusable neglect; . . . [or]

    (6) the judgment is void . . . .."

on vacation until May 3, 1977, are such as might have permitted the trial court to excuse the neglect. The fact that the claims supervisor took immediate action when the matter finally came to his attention is another factor which could have permitted the granting of relief. However, merely because we conclude that the trial court might not have abused its discretion by granting the motion to vacate on these facts, it does not necessarily follow that the court did abuse its discretion when it denied the motion.

■ The neglect, whether on the part of Grecco or Sentry, was not shown as a matter of law to have been excusable neglect. Both Grecco and Sentry were aware long before Campbell's complaint was filed that litigation was likely to ensue. Both Grecco and Sentry were aware, prior to the default, that a complaint had, in fact, been filed. The trial court's ruling that the default was not the result of excusable neglect was within the proper bounds of its discretion.

Grecco's next argument on appeal is that the judgment is void because the service of process was faulty. More specifically, he argues that the address to which the sheriff delivered the complaint (4329 Ryan Court) was not his "dwelling house or usual place of abode" at the time of the delivery.

■ Indiana's courts have not yet construed the language in question. Although there are innumerable decisions from other jurisdictions construing substantially similar language, those cases are in hopeless and irreconcilable conflict and provide little guidance. See Annot., 32 A.L.R.3d 112 (1970). What is or is not a party's "dwelling house or usual place of abode" within the context of TR. 4.1 is a question that must turn on the particular facts of each case.

■ Grecco relies heavily on the fact that between March 8 and April 13 he was staying with relatives. The fact that Grecco was not physically present every day at the Ryan Court address is not dispositive. Grecco acknowledged that prior to March 8

and after April 13 he was living in the house he owned on Ryan Court. Furthermore, in an affidavit submitted with his motion to vacate, Grecco referred to his action in terminating the stay with relatives and returning to the Ryan Court address on April 13 as "returning home." The evidence thus supports the trial court's conclusion that the Ryan Court address constituted Grecco's dwelling house or usual place of abode.

■ Grecco's final assertion of error concerns certain language found in the trial court's order reflecting the entry of default. That order reads in pertinent part as follows:

"This cause having been set for trial on this date on the regular calendar of the Court, and notice thereof having been given, defendant James Grecco failing to appear is now three times audibly called in open court and comes not and is now wholly defaulted."

In point of fact, the matter was not placed on the trial calendar and Grecco was not given notice of Campbell's application for the entry of default. Grecco maintains that these procedural omissions render the judgment void. We disagree.

The language in question is mere surplusage. The default proceedings did not constitute a trial, State v. Claycombe (1954), 233 Ind. 247, 118 N.E.2d 489, and, therefore, it was not necessary for the court to set the matter for trial on the calendar. Furthermore, when, as here, a party has failed to appear, notice of the application for default is not required. Harvey, Indiana Practice, Vol. 3, Page 524. The error in using the language in question was harmless.

The judgment of the trial court is affirmed.

GARRARD, P. J., and HOFFMAN, J., concur.