**WW EXTENDED CARE, INC.,**
**Appellant–Plaintiff/Cross–**
**Appellee,**

v.

**AETNA LIFE INSURANCE COMPA-**
**NY a/k/a Aetna US Healthcare, Ap-**
**pellee–Defendant/Cross–Appellant.**

**No. 02A05–0104–CV–145.**

Court of Appeals of Indiana.

Sept. 28, 2001.

---

Jack E. Roebel, Fort Wayne, IN, Attorney for Appellant.

Gary C. Furst, Matthew M. Hohman, Barnes & Thornburg, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Appellant Plaintiff, WW Extended Care, Inc. (Extended Care), appeals the trial court's modification of default judgment. On cross-appeal, Appellee–Defendant/Cross–Appellant, Aetna Life Insurance Company a/k/a Aetna U.S. Healthcare (Aetna), appeals the trial court's finding that Extended Care's service of pleadings was sufficient to provide the trial court with personal jurisdiction over it.

### ISSUES

Extended Care raises one issue on appeal, which we restate as follows: whether Special Judge Stanley Levine [1] (hereinaf-

---

1. Special Judge Paul Mathias was originally appointed to preside over this matter. However, Judge Mathias was appointed to this court in March 2000. Therefore, he recused himself from this case on March 23, 2000. Subsequently, Special Judge Levine was appointed to preside over the instant case.

ter the "trial court") erred when he eliminated the monetary damage award from the default judgment ordered by the previous trial judge on January 10, 2000.

On cross-appeal, Aetna raises one issue, which we restate as follows: whether the trial court erred by finding that Extended Care's service of pleadings was sufficient to provide the trial court with personal jurisdiction over it.

## FACTS AND PROCEDURAL HISTORY

Extended Care obtained a judgment in Ohio state court against Mary Swinkunas (Swinkunas) for $42,381.51, an amount that Swinkunas owed in connection with nursing home services provided by Extended Care. On June 8, 1998, the Allen Circuit Court domesticated the judgment.

In order to satisfy its judgment against Swinkunas, on November 11, 1999, Extended Care filed its Verified Motion for Proceedings Supplemental, Order Thereon, and Summons and Interrogatories to Garnishee Defendant against Aetna. Swinkunas owns, or is the beneficiary of, an Aetna insurance policy. Aetna was ordered to answer the interrogatories submitted to it by Extended Care. Aetna was also ordered to appear in court on December 17, 1999.

The motion for proceedings supplemental, the accompanying order, the summons, and the garnishment interrogatories were sent to "Aetna Life Insurance Company Healthcare Plans" at a post office box in Hartford, Connecticut. The materials did not designate a specific person to whom they were to be delivered. According to the mail card that accompanied the proceedings supplemental materials, Aetna received the documents on November 19, 1999. The card was signed by Wendall Williams.

At some point, the materials made their way to Gloria Permenter (Permenter), a subrogation analyst for Aetna. Permenter's duties as a subrogation analyst include determining "whether claims submitted by Aetna insureds should be reimbursed and to occasionally assist with legal matters concerning the company." (Aetna Appendix at 50). Permenter attempted to provide the requested information, but was unsuccessful.

On December 15, 1999, Permenter called Extended Care's counsel, Jack Roebel (Roebel), to inform him that she was attempting to provide the requested information, but that she was unable to do so. However, Roebel was unavailable. Therefore, Permenter explained to Roebel's secretary that she needed more information to answer the interrogatories and, without more information, Aetna would not be able to sufficiently answer the interrogatories. Apparently, Permenter believed that if Aetna provided the information sought in the interrogatories regarding Swinkunas, it was not necessary for Aetna to appear in court on December 17, 1999.

On December 16, 1999, Permenter, again, called Roebel. And again, Roebel was unavailable. On December 17, 1999, Roebel called Permenter and asked for her facsimile number because he had "something to fax" to her. (Aetna Appendix at 52). Later that same day, Permenter received a Motion for Default Judgment via facsimile.

On December 27, 1999, Extended Care filed its Motion for Default Judgment against Aetna. The Motion alleged that Aetna was duly served with the Verified Motion for Proceedings Supplemental. The Motion also alleged that Aetna failed to timely respond to the Verified Motion for Proceedings Supplemental and failed to appear for the scheduled hearing on December 17, 1999. Therefore, Extended

Care requested that the trial court enter a default judgment against Aetna in the amount of the outstanding judgment, $42,381.51.

On January 10, 2000, the trial court granted Extended Care's Motion for Default Judgment, and entered judgment against Aetna in the amount of $42,381.51. On February 11, 2000, Aetna filed a Motion to Set Aside Default Judgment. Aetna maintained that the trial court should grant its Motion because the relief granted by the default judgment is not available in a garnishment proceeding. In addition, Aetna argued that Extended Care failed to make the required showing that it owed an obligation to Swinkunas. Finally, Aetna argued that the trial court did not have any personal or subject matter jurisdiction.

On August 28, 2000, a hearing on Aetna's Motion to Set Aside Default Judgment was held. On September 20, 2000, the trial court found, in pertinent part:

> although service was deficient under Indiana Trial Rule 4.6(A)(1), as it was not directed to Aetna's executive officer or registered agent, service upon Aetna subrogation analyst, Gloria Permenter, was reasonably calculated to inform Aetna that an action had been instituted against it, the name of the court, and the time within which it was required to respond, and pursuant to Indiana Trial Rule 4.15(F) DENIES Aetna's Motion to Set Aside Default Judgment is DENIED.
>
> On its own motion, Court hereby MODIFIES the Default Judgment entered against Aetna Life Insurance Company a/k/a Aetna U.S. Healthcare on January 10, 2000. Said Default Judgment shall now read.
>
> Garnishee–Defendant Aetna Life Insurance Company a/k/a Aetna U.S. Healthcare is now called and defaulted. Judgment is now entered for Plaintiff against Aetna Life Insurance Company a/k/a Aetna U.S. Healthcare in garnishment in the amount due and owing to Mary Swinkunas by Aetna Life Insurance Company a/k/a Aetna U.S. Healthcare under Ms. Swinkunas' Group Accident and Health Insurance Policy, policy number GP–654020.

(Aetna Appendix 21).

As a result of the modified default judgment, Extended Care filed a Motion to Correct Errors on October 13, 2000. After a March 5, 2001 hearing, the trial court denied Extended Care's Motion to Correct Errors. This appeal followed.

### DISCUSSION AND DECISION

Both Extended Care and Aetna argue that the September 20, 2000 Order or Judgment of the Court constitutes error by the trial court. Extended Care argues that the trial court's modification of default judgment constitutes reversible error because Aetna did not demonstrate excusable neglect or any other statutory ground required to overturn a default judgment. Thus, Extended Care insists that the trial court erred when it eliminated the monetary damage award from the default judgment. On the other hand, Aetna, on cross-appeal, argues that it was not properly served with the pleadings. Therefore, Aetna maintains that the default judgment was improper and the trial court's denial of its Motion to Set Aside Default Judgment was also improper.

We review the grant or denial of an Ind.Trial Rule 60(B) motion for relief from judgment on an abuse of discretion standard. *Integrated Home Technologies, Inc. v. Draper*, 724 N.E.2d 641, 642 (Ind. Ct.App.2000). An abuse of discretion occurs when the trial court's judgment is

clearly against the logic and effect of the facts and inferences supporting the judgment for relief. *Id.*

## I. *Service*

■ On cross-appeal, Aetna claims that because it was not properly served with the pleadings, the default judgment and the denial of its Motion to Set Aside Default Judgment are void for lack of personal jurisdiction. We agree that a judgment rendered without personal jurisdiction is void. *See Hill v. Ramey*, 744 N.E.2d 509, 512 (Ind.Ct.App.2001). However, we find that the service of pleadings was sufficient for the trial court to acquire personal jurisdiction over Aetna.

Service upon an organization is governed by T.R. 4.6, which provides, in pertinent part, as follows:

(A) Persons to be served. Service upon an organization may be made as follows:

(1) In the case of a domestic or foreign organization upon an executive officer thereof, or if there is an agent appointed or deemed by law to have been appointed to receive service, then upon such agent.

Additionally, T.R. 4.15 provides, in pertinent part, as follows:

(F) Defects in summons. No summons or the service thereof shall be set aside or be adjudged insufficient when either is reasonably calculated to inform the person to be served that an action has been instituted against him, the name of the court, and the time within which he is required to respond.

Furthermore, in *Washington v. Allison*, 593 N.E.2d 1273, 1275 (Ind.Ct.App.1992), this court held that:

Ind. Trial Rules 4.1 and 4.6 provide that service *may be made* upon an individual, in the case of T.R. 4.1, or upon an organization, in the case of T.R. 4.6. In contrast, other rules provide that service *shall be made* upon certain parties in a designated manner. *See, e.g.,* T.R. 4.2 (service upon infant or incompetents) and T.R. 4.3 (service upon institutionalized persons). The discretionary nature of T.R. 4.1 and T.R. 4.6, coupled with the provision in T.R. 4.15(F), that "[n]o service [of summons] shall be ... adjudged insufficient when [it] is reasonably calculated to inform the person to be served that an action has been instituted against him ...," is evidence that personal jurisdiction is acquired by any method of service of summons which comports with due process. As we said in *Buck v. P.J.T.* (1980), 182 Ind.App. 71, 72–3, 394 N.E.2d 935, 936:

[W]e must bear in mind ... [t]here is a difference between a form of service that is not reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to be heard and a form that, while reasonably calculated to give actual notice, fails to do so in a specific case. In the former, personal jurisdiction is not acquired because the proceeding fails to accord due process. In the latter, personal jurisdiction is present.

*Id.* (emphasis supplied).

■ With the above in mind, we find that the trial court did not err in finding that, although the service of pleadings was deficient under T.R. 4.6(A)(1), it was reasonably calculated to inform Aetna that an action had been instituted against it. The proceedings supplemental materials were mailed to: Aetna Life Insurance Company Healthcare Plans, P.O. Box 150409, Hartford, Connecticut 06115–0409. The materials made their way to Permenter, a subrogation analyst for Aetna. Permenter's duties as a subrogation analyst include

"occasionally assist[ing] with legal matters concerning the company." (Aetna Appendix at 50). Furthermore, Permenter contacted Roebel, Extended Care's counsel, in an attempt to discuss the matter and to provide Extended Care with the requested information. Finally, Permenter was aware of the December 17, 1999 court date.

It is inconsequential that Permenter was misguided in her belief that if she provided the information sought in the interrogatories regarding Swinkunas, it was not necessary for Aetna to appear in court on December 17, 1999. The Verified Motion for Proceedings Supplemental specifically states:

### ORDER TO DEFENDANT AND SUMMONS TO GARNISHEE DEFENDANT

Plaintiff files Verified Motion and Interrogatories, (H.I.). Motion granted. Defendant(s)(is)(are) ordered to appear in this Court on the December 17, 1999, at 9:00 a.m. Garnishee Defendant is ordered to answer and return to the Court the attached interrogatories on or before *December 10, 1999.* The Garnishee–Defendant is hereby ordered to appear in this Court on December 17, 1999, at 9:00 a.m.

(Aetna Appendix at 25) (emphasis supplied). The Verified Motion for Proceedings Supplemental clearly states that Aetna was required to answer the interrogatories by a certain date and appear in court on a certain date. The Verified

Motion does not indicate that Aetna did not have to appear in court if it was working on answering or actually answered the interrogatories. Consequently, we find that even though Extended Care's service of pleadings did not comply with T.R. 4.6(A)(1), it was reasonably calculated to inform Aetna that an action had been instituted against it. *See Washington,* 593 N.E.2d at 1275. Therefore, we find that the trial court acquired personal jurisdiction over Aetna. *See id.*[2]

### II. *Modification of Default Judgment*

Extended Care argues that the trial court erred when it eliminated the monetary damage award from the default judgment ordered by the trial court on January 10, 2000. To fully analyze Extended Care's argument, we must first discuss the propriety of the underlying default judgment.

Default judgments are governed by T.R. 55, which, in pertinent part, provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise comply with these rules and that fact is made to appear by affidavit or otherwise, the party may be defaulted." Additionally, Ind.Code § 34–25–3–5 provides:

(a) This section applies to a garnishee who is summoned and:

(1) fails to appear and provide discovery as required by law; or

(2) fails to answer or demur to the matters set forth against the garnish-

---

2. *Cf. Volunteers of America v. Premier Auto Acceptance Corp.,* 755 N.E.2d 656 (Ind.Ct. App.2001) (holding that Premier's service of pleadings to VOA was not proper because 1) the pleadings were not addressed to the registered agent or an executive officer and 2) no one from VOA ever became aware or informed of the garnishment proceeding before a default judgment was entered against VOA, and, thus, the service of pleadings was not reasonably calculated to inform VOA that an action had been taken against it.). This case is distinguishable from the instant case in that Permenter was aware that an action had been taken against Aetna; she occasionally assisted with legal matters concerning the company; and she took affirmative steps to resolve the matter, i.e. calling Extended Care's counsel.

ee in the affidavit, additional complaint, or interrogatories.

(b) When a garnishee fails to provide information as described in subsection (a):

\* \* \*

(2) judgment may be entered by default; or

▪ In the instant case, Extended Care properly served Aetna with the Verified Motion for Proceedings Supplemental. The proceedings supplemental materials included interrogatories, which Aetna failed to timely answer. The materials also included a summons with the specific day and time that Aetna was to appear in court. As previously stated, Aetna failed to appear in court on the designated day and time. Because Aetna failed to timely answer the interrogatories and failed to appear in court, Extended Care filed its Motion for Default Judgment, which was granted.

When Aetna filed its Motion to Set Aside Default Judgment, it argued, as it does now, that Extended Care did not properly identify the debt owed to it. Therefore, Aetna argues that the default judgment, prior to its modification, exceeded the trial court's subject matter jurisdiction and, thus, was void.

In *National Mut. Ins. Co. v. Sparks*, 647 N.E.2d 375, 377 (Ind.Ct.App.1995), *reh'g denied, trans. denied*, this court held that:

In the event a person is named as a garnishee, the motion must allege that the "garnishee has or will have specified or unspecified nonexempt *property of, or an obligation owing to the judgment debtor* which will be subject to execution or proceedings supplemental to execution, . . .". T.R. 69(E) (Emphasis supplied). Property in which the judgment-debtor has no present interest may not

be subjected to garnishment. *Browning & Herdrich Oil Co., Inc. v. Hall* (1986), Ind.App., 489 N.E.2d 988. A judgment attaches only to the extent that the judgment-debtor has an interest in the property sought to be attached. *Id.* Indiana law allows collection only against named judgment-debtor and those the debtor could have pursued themselves. *Supporters to Oppose Pollution v. Heritage Group [StOP]* (7th Cir.1992), 973 F.2d 1320, 1327.

Additionally, in *Lakeshore Bank and Trust Co. v. United Farm Bureau Mut. Ins. Co., Inc.*, 474 N.E.2d 1024, 1026 (Ind.Ct.App. 1985), this court held that "[g]arnishment proceedings are a means whereby a judgment creditor seeks to reach property or credits of the judgment debtor in the hands of third persons and have them applied in satisfaction of the judgment."

In its Verified Motion for Proceedings Supplemental, Extended Care alleged that "Garnishee Defendant has in its possession the following personal property of Defendant(s), to-wit: Wages, Salaries, Commissions, Earnings and Income." (Aetna Appendix at 25). The Verified Motion also indicated that the balance due on the judgment against Swinkunas was $42,381.51. Furthermore, Aetna failed to appear in court on December 17, 1999, and failed to respond to Extended Care's Motion for Default Judgment. Consequently, the trial court did not have any information rebutting that fact that Aetna owed Extended Care $42,381.51. Therefore, we find that the trial court did not exceed its subject matter jurisdiction in granting Extended Care's Motion for Default Judgment, because Extended Care alleged property that Aetna had in its possession and identified the amount of the unsatisfied debt.

Finally, we look to T.R. 60, which governs Aetna's Motion to Set Aside Default

Judgment. T.R. 60 provides, in pertinent part, that:

> (B) Mistake—Excusable neglect—Newly discovered evidence—Fraud, etc. On motion and upon such terms as are just the court may relieve a party or his legal representative from an entry of default, final order, or final judgment, including a judgment by default, for the following reasons:
>
> * * *
>
> (6) the judgment is void;
>
> * * *
>
> (8) any reason justifying relief from the operation of the judgment, other than those reasons set forth in subparagraphs (1), (2), (3), and (4).

Additionally, in *Weppler v. Stansbury*, 694 N.E.2d 1173, 1176 (Ind.Ct.App.1998), this court held that "under T.R. 60(B)(8), the party asking for relief must show that its failure to act or the result was not merely due to an omission involving mistake, surprise, or excusable neglect. Rather, some extraordinary circumstances must be affirmatively demonstrated."

As previously stated, Aetna tried to establish that the trial court's grant of Extended Care's Motion for Default judgment was void for lack of personal and subject matter jurisdiction. However, we have found that the trial court had proper personal and subject matter jurisdiction. Therefore, the judgment was not void. Furthermore, Aetna has not affirmatively demonstrated any other ground for relief from judgment as provided for in T.R. 60(B). Consequently, we find that the trial court properly denied Aetna's Motion to Set Aside Default Judgment.

We do find, however, that the trial court improperly eliminated the monetary damage award from the default judgment. Though Aetna failed to appear in court on December 17, 1999, and failed to respond to Extended Care's Motion for Default Judgment, it affirmatively maintains, now and in its Motion to Set Aside Default Judgment, that if it owes any part of the unsatisfied debt of $42,381.51, Extended Care must establish with some specificity what assets, wages, salaries, commissions, earnings and/or income it owes to Extended Care. We agree. As previously stated, property in which the judgment-debtor has no present interest may not be subjected to garnishment. *National Mut. Ins. Co.*, 647 N.E.2d at 377. Thus, Extended Care has no right to property above and beyond Swinkunas' policy limits covered under her Group Accident and Health Insurance Policy.

Apparently, the trial court agreed with this analysis, because it modified the monetary damage award of the default judgment. The problem with this action is that Extended Care is without a specific judgment in garnishment against Aetna. The court did not order further proceedings to determine the nature and extent of the judgment debtor's interest in the Aetna policy. Consequently, we find that the trial court abused its discretion when it modified the court's January 10, 2000 Order, eliminating the monetary damage award of $42,381.51 without ordering further proceedings to determine the amount of money, if any, subject to proceedings supplemental to satisfy Extended Care's money judgment against Swinkunas. *See Integrated Home Technologies, Inc.*, 724 N.E.2d at 642.

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly found that Extended Care's service of pleadings was sufficient to provide the court with person-

al jurisdiction over Aetna. However, we conclude that the trial court improperly modified the previous judge's January 10, 2000 Order, when it eliminated the monetary damage award of $42,381.51 without determining the amount of Aetna's obligation, if any, to Swinkunas under the policy. Therefore, we affirm the trial court's denial of Aetna's Motion to Set Aside Default Judgment, but remand for further proceedings as to the issue of damages.

SHARPNACK, C.J., and NAJAM, J., concur.